# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Jolie Krooks

### DEFENDANTS
Haverford College

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Delaware County, PA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Charles Weiner, Law Office of Charles Weiner, Cambria Corporate Center, 501 Cambria Avenue, Bensalem, PA 19020, 267-685-6311

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☒ 446 Amer. w/Disabilities - Other / **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education / ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
29 U.S.C. §794 (§504 of Rehabilitation Act of 1973), 42 U.S.C. §12101 et. seq. (Amer. w/Disabilities Act)

Brief description of cause:
Defendant discriminated against Plaintiff on the basis of disability.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $** $150,000+

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE: 7/9/2014

SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

S.T.

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE  JUL 11 2014   MAG. JUDGE _____

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: Jolie Krook, 33 East Camino Real, APT. 407, Boca Raton, FL 33432

Address of Defendant: Haverford College, 370 Lancaster Ave., Haverford, PA 19041

Place of Accident, Incident or Transaction: Haverford, PA
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))    Yes☐   No☑

Does this case involve multidistrict litigation possibilities?    Yes☐   No☑
RELATED CASE, IF ANY:
Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐   No☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐   No☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐   No☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐   No☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. Federal Question Cases:
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☑ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. Diversity Jurisdiction Cases:
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify) _____

ARBITRATION CERTIFICATION
(Check Appropriate Category)
I, Charles Weiner, counsel of record do hereby certify:
☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: 7-9-2014     _____     52926
                    Attorney-at-Law     Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 7-9-2014     _____     JUL 11 2014     52926
                    Attorney-at-Law                    Attorney I.D.#

CIV. 609 (5/2012)



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

Jolie Krook
    PLAINTIFF

v.

Haverford College
    Defendant

CIVIL ACTION

14    4205

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (✓)

---

7/9/2014      _Chal W_      Plaintiff
**Date**      **Attorney-at-law**      **Attorney for**

267-685-6311      215-604-1507      Charles@CharlesWeinerlaw.com
**Telephone**      **FAX Number**      **E-Mail Address**

(Civ. 660) 10/02

JUL 11 2014

$400 CDJ

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOLIE KROOKS, <br><br> Plaintiff, <br><br> v. <br><br> HAVERFORD COLLEGE <br><br> Defendant. | 14  4205 <br><br> Case No. |

## COMPLAINT

Plaintiff Jolie Krooks, by and through her undersigned counsel, commences this Complaint against Haverford College, for discrimination in violation of the federal non-discrimination statute, namely the Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 (Section 504) and the Americans with Disabilities Act, 42 U.S.C. §12101 et. seq. (ADA).

### INTRODUCTION

1. This action seeks redress for Ms. Krooks, a person with a disability against Haverford College, for its intentional discrimination directed at Ms. Krooks by barring her from participating on Haverford College's softball and tennis teams, because of her disability.

2. Haverford College solely by reason of Ms. Krooks disability, excluded her from the participation in and denied her the benefits of a school program and otherwise subjected her to discrimination because of her disability in violation of Section 504 and the ADA.

### JURISDICTION AND VENUE

3. This action arises under the laws of the United States, specifically the Rehabilitation Act of 1973, 29 U.S.C. §794 *et. seq.* ("Section 504") and the Americans with

1

Disabilities Act, 42 U.S.C. §12101 et. seq. (ADA). Therefore, this Court has subject matter jurisdiction based on a federal question pursuant to 28 U.S.C. §§1331 and 1343(a)(3) and (4).

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391, as the Defendant is located and doing business in this judicial district. Alternatively and cumulatively, venue is proper in this Court pursuant to 28 U.S.C. §1391 in that acts of discrimination have taken place in this District.

## THE PARTIES

5. Plaintiff, Jolie Krooks, is a 23-year-old individual who graduated from Haverford College in 2013 and will be entering her first year of medical college. During her matriculation at Haverford College, she was a person with a disability under Section 504 and the ADA and entitled to federal protection from discrimination from Defendant. Ms. Krooks currently lives and resides in Boca Raton, Florida.

6. Defendant, Haverford College, is a private college located at 370 Lancaster Avenue, Haverford, Pennsylvania. Haverford is a recipient of federal financial funding and is therefore subject to Section 504 and the ADA.

## FACTUAL BACKGROUND

7. Ms. Krooks prior to entering Haverford College had a history of an eating disorder which, when active, substantially impaired the major life activities of eating, caring for oneself and otherwise impaired her digestive system and mental and emotional well being.

8. While Ms. Krooks eating disorder impaired certain aspects of her life, her impairment was neither crippling nor did it impair all aspects of her life.

9. Ms. Krooks has played competitive fast pitch softball from the time that she was six years old. Throughout most of her preteen and teen years, she played softball on competitive

travel teams that compete, at a high level of play on a state and regional level. Many colleges utilized travel softball competitions and tournaments as a means to recruit players for college teams. Ms. Krooks also played softball for all four years of high school.

10. During Ms. Krooks senior year of high school, she submitted a video, which showcased her softball playing skills to several colleges including defendant. This is a practice, which is common among high school athletes, particular those seeking to play intercollegiate sports at a Division III school.[1]

11. Ms. Krooks was accepted for admission to Haverford College commencing in the 2009-2010 school year.

12. Ms. Krooks was also accepted onto the Haverford College women's softball team for the 2009-2010 school year. On information and belief, the Haverford College women's softball team neither conducted tryouts for positions on the team, nor were any players removed (cut) from the team roster.

13. In the summer/fall of 2009, before starting school and softball season, Ms. Krooks and her parents advised Haverford's Health Services that she had a history of having an eating disorder. Ms. Krooks also advised the coach of Haverford's softball team, Jennifer Ward (Ward), that she was affected by an eating disorder.

14. After advising Defendant of her condition, Ward and other Haverford personnel and administration treated Ms. Krooks in a discriminatory and disparate manner from other members of the women's softball team.

15. During Ms. Krooks freshman year (2009-2010), Ward refused to play Ms. Krooks in games; however, she allow all other players on the roster to have playing time. She also

---

[1] Division III refers to a division of the National Collegiate Athletic Association (NCAA) of which Haverford College is a member. Division III consists of colleges and universities that do not offer athletically related scholarships to student athletes.

3

limited Ms. Krooks participation in practice compared to other members on the roster. Ward also refused to allow Ms. Krooks to participate in batting practice either before or after scheduled practices, claiming that the school's insurance coverage prohibited Ms. Krooks from engaging in batting practice. Other members of the women's softball team were permitted to engage in batting practice.

16. As a result of the repeated and pervasive discriminatory treatment that Ms. Krooks was subjected to, in the spring 2010, she suffered a regression in her health relating to her eating disorder and emotional status at the end of the 2010 spring semester. Consequently, in the spring 2010, Ms. Krooks left school and completed finals at her home.

17. Ms. Krooks returned to school for the 2010-2011 school year (sophomore year). She continued to participate on the women's softball team. Neither Ms. Krooks nor any other player on the team was required to tryout for the team during the 2010-2011 school year and no player was cut from the team.

18. In about November 2010, Ms. Krooks made an appointment to receive a routine health examination with a cardiologist. Ms. Krooks obtained a referral for an appointment with a cardiologist from Haverford's Director of Health Services, Catherine Sharbaugh (Sharbaugh) as required by Ms. Krooks health insurance plan then in force.

19. In January 2011, Sharbaugh after receiving knowledge of Ms. Krooks appointment with a cardiologist, required as a condition of continued participation on the women's softball team, medical clearance to play softball from the cardiologist with whom she had an appointment.

20. On information and belief, no other player on the women's softball roster was required to provide medical clearance from a cardiologist to play softball.

4

21. Ms. Krooks complied with Sharbaugh's unusual and discriminatory request and furnished Haverford with medical clearance from the cardiologist to play softball and medical clearance from her family physician to play softball.

22. Despite not being a physician, Sharbaugh refused to accept the medical clearance that she requested and further refuse to allow Ms. Krooks to play or practice with the softball team.

23. In furtherance of her discriminatory and otherwise unlawful acts, Sharbaugh disclosed, without Ms. Krooks' knowledge or consent, her private medical information with Martha J. Denney (Dean Denney), Dean of Haverford College; Donna Mancini, Associate Dean of Haverford College; Wendy Smith (Smith), Director of Athletics; and Jennifer Ward, Coach of Women's Softball.

24. By letter dated February 7, 2011 from Dean Denney to Ms. Krooks, she was advised that she was not permitted play or practice with the softball team. The February 7, 2011 letter provided a contrived list of purported concerns, which was based on discriminatory beliefs about Ms. Krooks' condition; rather, that on actual medical data or reliable information about her condition.

25. In Dean Denney's February 7, 2011 letter, Defendant created a list of conditions that Ms. Krooks was required to meet in order to be eligible to play softball. The list of conditions was intrusive, unreasonable, harassing, humiliating and otherwise demonstrated an intentional act of discrimination and/or deliberate indifference towards Ms. Krooks. These unreasonable conditions included the following: "Weekly scheduled consultations with the Director of Health Services, to include weighing in; Achieving a BMI of at least 19.5; Comprehensive evaluation by Haverford's staff psychiatrist with specific attention to any

5

medications [Ms. Krooks] may be taking; Bone density and endocrine evaluations as determined by the Director of Health Services; No more than one hour per day of exercise; Weekly meetings with [Ms. Krooks] dean/faculty adviser to discuss academic/athletic balance and [her] progression through the liberal arts curriculum." Haverford College further mandated that if Ms. Krooks was deemed "eligible" to practice and play, she would be further required to agree to another set of conditions including weekly consultations with Health Services and a long-term commitment to psychological counseling to address purported behavior issues.

26. The unreasonable and unnecessary conditions that Defendant imposed upon Ms. Krooks amounted to barriers that blocked and otherwise prevented her from participating on the softball team and otherwise denied her benefits of a program offer by Haverford College.

27. Haverford College knew or had reason to know that its conditions were unreasonable and excessive. Haverford College further expressly acknowledged that its conditions were disappointing and distressing to Ms. Krooks.

28. Ms. Krooks attempted to return to the team in mid-March 2011. However, due to Haverford's unreasonable and discriminatory standards, which were applied only to Ms. Krooks, she continued to be blocked and prevented from participating on the women's softball team.

29. Over the course of the summer of 2011, Haverford continued to implement and mandate that Ms. Krooks comply with its conditions in order to play or practice with the softball team.

30. In or about late August 2011, Ms. Krooks notified Haverford that she complied with their conditions, that she had been cleared by her physician to play softball.

31. Haverford continued to set up barriers and continue to mandate adherence to its unreasonable requirements of eligibility that were implemented exclusively for Ms. Krooks.

32. Not only were the conditions that Haverford imposed on Ms. Krooks unreasonable, its implementation of these rules at times were chilling and outrageous. On one or more occasions, Ms. Krooks appeared at Haverford's Health Services to have her weight checked and was ordered by Sharbaugh to remove all her clothing in front of Sharbaugh, despite Krooks repeated protests.

33. Haverford's conduct was designed to discourage, dissuade and punish Ms. Krooks for pursuing and advocating for her rights. As a proximate result of Defendant's persistent and pervasive conduct, Ms. Krooks felt humiliation, embarrassment, shame, and self-conscious.

34. On or about November 29, 2011, Ms. Krooks provided substantial documentation that demonstrated that she complied with and exceeded Haverford's conditions for returning to play and practice with the softball team. The documentation included medical clearance from Michael Pertschuk, M.D., a leading specialist on eating disorders.

35. Dean Denney acknowledged receipt of Ms. Krooks documentation and asserted that the so-called assessment team would determine if the information was sufficient.

36. On information and belief, the assessment team did not have a physician and was comprised largely of non-medically trained personnel.

37. Ms. Krooks made several inquiries to Dean Denney regarding the status of her request to return to the softball team.

38. On January 5, 2012, after several delay tactics, the assessment team determined that Ms. Krooks met the conditions to be eligible for the softball team.

39. Immediately after receiving clearance from the assessment team to play softball, Ms. Krooks advised Ward of eligibility to play on the team.

7

40. After a several week delay, Ward advised Ms. Krooks to contact her to set up a meeting and discuss tryouts. Ms. Krooks promptly contacted Ward and offered her availability for a meeting.

41. While Haverford never had any tryout for the softball team or any cuts during Ms. Krooks prior years, because of her desire and resolve to play softball, Mr. Krooks was willing to participate in tryouts.

42. Ms. Krooks was not offered an opportunity to tryout for the team. Rather, Ward simply advised Krooks in early February that she was cut from the team.

43. Ms. Krooks requested that Ward reconsider her position but Ward refused to respond.

44. In an attempt to recover from this devastating blow of being discriminatorily excluded from the softball team, in the spring of 2012, Ms. Krooks attempted to participate on the women's tennis team.

45. During the pre-tennis season, Ms. Krooks played with the tennis team captain and other members of the team. Mr. Krooks express her desire to be included as a member of the tennis team. Ms. Krooks spoke with Haverford's tennis coach and was advised that she could be on the team.

46. After advising that Ms. Krooks could be part of the tennis team, Ann Koger, Haverford's women's tennis coach, abruptly advised Ms. Krooks that she could not play on the team.

47. Haverford's implementation of conditions and ultimate refusal to allow her to participate on the softball team and tennis team was intentional and/or done with deliberate

8

indifference, which deprived Ms. Krooks the benefits of the athletic programs offered by Haverford College because she was regarded as having a disability.

48. During Ms. Krooks junior and senior year 2011-2012 and 2012-2013, she inquired about returning to the softball team. Ward, however, continued to refuse to communicate with Ms. Krooks.

49. Haverford's conduct constitutes a continuing act and pattern of discrimination directed at Ms. Krooks.

50. Ms. Krooks was not able to institute legal action at an earlier date as due to fear of further discrimination and/or retaliation, which may have impacted her ability to graduate from Haverford College and from gaining admission to medical school.

## COUNT I – DISCRIMINATION UNDER TITLE III OF THE AMERICANS WITH DISABILITIES ACT

51. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if set forth herein.

52. Pursuant to the Americans with Disabilities Act (ADA) a person with a disability includes an individual with:

>  (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>  (B) a record of such impairment;
>  (C) being regarded as having such an impairment....

53. Ms. Krooks was a qualified person with a disability in that she had an eating disorder, which impaired her eating and digestive functions. Additionally, Defendant regarded her as having an impairment.

54. Title III of the ADA prohibits covered entities from discriminating against persons with disabilities in the provision of benefits, services and or programs. The ADA, 42 U.S.C. §12182(a), provides in pertinent part

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodations by any person who owns, leases (or leases to), or operates a place of public accommodation.

55. Defendant, Haverford College, owns leases and/or operates a place of public accommodation as defined under Title III of the ADA, 42 U.S.C. §12181(7)(J).

56. Defendant has discriminated and continues to discriminate against Plaintiff on the basis of her disability, in violation Title III of the ADA.

57. Defendants acts of discrimination included but was not limited to: (a) wrongfully and unnecessarily excluding Ms. Krooks from the softball and tennis teams; (b) treating Ms. Krooks differently from other players; (c) disclosing her disorder and other private/personal medical information without her consent or knowledge; (d) requiring unnecessary and unreasonable medical documentation to participate in school athletic programs; (e) disregarding medical documentation supporting Ms. Krooks eligibility to participate in school athletic programs; (f) mandating and creating unreasonable and unnecessary conditions for eligibility to participate in school athletic programs; (g) subjecting Ms. Krooks to physically and emotionally, harsh, cruel, intimidating and alienating conditions at Defendant's college; (h) subjecting Ms. Krooks to a hostile environment and disparate treatment.

58. Defendant acted intentionally or with deliberate indifference to Ms. Krooks rights under the ADA.

### COUNT II – DISCRIMINATION UNDER SECTION 504 OF THE REHABILITATION ACT OF 1973

59. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if set forth herein.

60. Section 504 of the Rehabilitation Act of 1973 (Section 504) incorporates by reference the definition of an individual with a disability set forth in the ADA. 29 U.S.C. §705(20)(B).

61. Section 504 prohibits covered entities from discriminating against persons with disabilities in the provision of benefits, services or programs. Section 504, 29 U.S.C. §794(a) provides in pertinent part:

> No other qualified individual with a disability in the United States…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance or under any program or activity….

62. Defendant Haverford College is subject to Section 504 because it receives federal financial assistance.

63. By wrongfully, unnecessarily, isolating and eliminating Ms. Krooks from the softball and tennis teams, Defendant denied her participation in or benefits of its athletic programs to which she was entitled and otherwise excluded her from the educational, social, and other opportunities available to other students who were not disabled or regarded as being disabled.

64. Defendant has discriminated and continues to discriminate against Plaintiff on the basis of her disability, in violation Section 504.

65. Defendant's acts of discrimination included but was not limited to: (a) wrongfully and unnecessarily excluding Ms. Krooks from the softball and tennis teams; (b) treating Ms. Krooks differently from other players; (c) disclosing her disorder and other private/personal

11

medical information without her consent or knowledge; (d) requiring unnecessary and unreasonable medical documentation to participate in school athletic programs; (e) disregarding medical documentation supporting Ms. Krooks eligibility to participate in school athletic programs; (f) mandating and creating unreasonable and unnecessary conditions for eligibility to participate in school athletic programs; (g) subjecting Ms. Krooks to physically and emotionally, harsh, cruel, intimidating and alienating conditions at Defendant's college; (h) subjecting Ms. Krooks to a hostile environment and disparate treatment.

66. Defendant acted intentionally or with deliberate indifference to Ms. Krooks rights under Section 504.

## COUNT III – RETALIATION UNDER SECTION 504 AND ADA

67. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if set forth herein

68. Section 504 and the ADA prohibits retaliation against any person(s) engaged in protected activity, regardless of whether she is disabled.

69. Plaintiff engaged in protected activity when she advocated for a fair and discrimination free environment and for participation in the athletic programs at Haverford College.

70. Defendant was aware that Ms. Krooks was engaged in protected activity and nevertheless retaliated against her.

71. Defendant has retaliated against Ms. Krooks by: (a) excluding Ms. Krooks from participation in the college's activities and denied benefits of its programs; (b) subjecting Ms. Krooks to physically and emotionally harsh, cruel, and alienating conditions; (c) subjecting Ms. Krooks to a hostile environment and disparate treatment.

## COUNT IV-DECLARATORY RELIEF

72. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if set forth herein.

73. A present and actual controversy exists between Plaintiff, Ms. Krooks and Defendant, Haverford College concerning their rights and respective duties. Ms. Krooks contends that Defendant violated her rights under Section 504 and the ADA. Based upon information and belief, Defendant denies these allegations, thus Declaratory Relief is therefore necessary and appropriate.

74. Ms. Krooks seeks a judicial declaration of the rights and duties of the respective parties accordingly.

## RELIEF REQUESTED

Plaintiff respectfully requests that this Court provide the following relief:

A. Award compensatory and consequential damages for an amount excess of $150,000.00;

B. Issue a declaratory judgment that Defendant's practices and policies subjected Plaintiff to discrimination in violation of Title III of the ADA and Section 504 of the Rehabilitation Act.

C. Award reasonable attorney fees, costs, fees and expenses pursuant to 29 U.S.C. §794a(b) and 42 U.S.C. §12205; and

D. Award any and all other relief that this Court finds necessary and appropriate.

13

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted

Dated: July 9, 2014

_____/s/___CW4713_____
Charles Weiner, Esquire
PA Attorney I.D. # 52926
LAW OFFICE OF CHARLES WEINER
Cambria Corporate Center
501 Cambria Avenue
Bensalem, PA 19020
Tel:  (267) 685-6311
Fax:  (215) 604-1507
charles@charlesweinerlaw.com

14