IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOLIE KROOKS, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 14-4205 |
| | : | |
| HAVERFORD COLLEGE, | : | |
| Defendant. | : | |

**Jones, II    J.**                                                                                          **January 14, 2015**

### MEMORANDUM

The Court holds that Plaintiff's causes of action are time-barred.

**I.    Standard of Review**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation and citation omitted). After the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678; *accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("[A]ll civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal quotation marks omitted).

"Although the statute of limitations is an affirmative defense, it may be raised in a motion to dismiss where the plaintiff's failure to comply with the limitations period is apparent from the face of the pleadings." *Datto v. Harrison*, 664 F. Supp. 2d 472, 482 (E.D. Pa. 2009); *see also Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n. 1 (3d Cir. 1994) (establishing that a statute of limitations may be raised in a motion to dismiss "where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading"); *Clark v. Sears, Roebuck & Co.*, 816 F.Supp. 1064, 1067 (E.D. Pa. 1993).

### II. Background
#### a. Pre-College

For the purpose of deciding the instant Motion, the Court must take all alleged facts as true. *Phillips*, 515 F.3d at 233. Plaintiff had played softball for all four years of high school on high-level, competitive travel teams. (Compl. ¶ 9.) Prior to attending Haverford College ("Haverford"), Plaintiff submitted a video to Haverford of her softball playing skills. (Compl. ¶ 10.) Plaintiff was accepted onto Haverford's women's softball team. (Compl. ¶ 12.)

#### b. Freshman Year (2009-2010)

Plaintiff matriculated at Haverford in the fall of 2009. (Compl. ¶ 11.) Haverford is a private college in Pennsylvania that is a recipient of federal financial funding. (Compl. ¶ 6.)

While at Haverford, Plaintiff was a person with a disability under the Americans with Disabilities Act ("ADA"). (Compl. ¶ 5.) Specifically, Plaintiff suffered from an eating disorder prior to, and during portions of, her matriculation at Haverford. (Compl. ¶¶ 7-8.) Prior to starting at Haverford, Plaintiff advised Haverford's Health Services and the coach of Haverford's softball team, Jennifer Ward ("Coach Ward"), that she had an eating disorder. (Compl. ¶ 13.)

During Plaintiff's freshman year, Coach Ward did not play Plaintiff in softball games and limited Plaintiff's participation in practice. (Compl. ¶ 15.) Specifically, Plaintiff was not allowed to participate in batting practice before or after practice. (Compl. ¶ 15.) Coach Ward told Plaintiff that she was not allowed to participate because of the school's insurance policies. (Compl. ¶ 15.)

In the spring of her freshman year, Plaintiff suffered a regression in her health related to her eating disorder. (Compl. ¶ 16.) That spring, Plaintiff left school and completed her finals at home. (Compl. ¶ 16.)

### c. Sophomore Year (2010-2011)

In the fall of 2010, Plaintiff returned to Haverford and re-started her participation on the softball team. (Compl. ¶ 17.) In November 2010, due to a requirement in her health insurance plan, Plaintiff sought and received a referral for a cardiologist from Haverford's Director of Health Services, Catherine Sharbaugh ("Sharbaugh"). (Compl. ¶ 18.) Sharbaugh is not a licensed physician. (Compl. ¶ 22.)

In January, 2011, Sharbaugh required, as a condition of continued participation on the women's softball team, medical clearance from a cardiologist to play softball. (Compl. ¶ 19.) Plaintiff was the only softball player required to get medical clearance from a cardiologist to participate on the softball team. (Compl. ¶ 20.) Plaintiff provided Haverford with a signed medical clearance from her cardiologist and her family physician. (Compl. ¶ 21.)

Sharbaugh refused to accept the medical clearance and did not allow Plaintiff to play or practice with the softball team. (Compl. ¶ 22.) Sharbaugh further disclosed Plaintiff's private medical information to multiple administrators at Haverford without Plaintiff's knowledge or consent. (Compl. ¶ 23.)

On February 7, 2011, Dean Martha J. Denney, Dean of Haverford, wrote to Plaintiff and advised her that she was not permitted to play or practice with the softball team. (Compl. ¶ 24.) In this letter, Dean Denney created a list of conditions that Plaintiff would have to meet in order to be eligible to play softball. (Compl. ¶ 25.) These requirements included weekly meetings with a faculty adviser, weekly consultations with health services, and comprehensive evaluations by Haverford's staff physiatrist. (Compl. ¶ 25.) More invasive yet, the requirements include body mass index, bone density, endocrine, and medication evaluations and minimums. (Compl. ¶ 25.) Haverford was on notice that these requirements were distressing to Plaintiff. (Compl. ¶ 27.) From February 2011 until August 2011, Plaintiff did not play softball. (Compl. ¶ 29.)

### d. Junior Year (2011-2012)

In August 2011, Plaintiff notified Haverford that she had complied with their conditions and had been cleared by her physician to play softball. (Compl. ¶ 30.) Haverford continued to impose requirements specific to Plaintiff to allow her to play. (Compl. ¶¶ 31-32.) These conditions included weight check-ins and, on one occasion, being ordered to remove all her clothing for a visual inspection before Sharbaugh, despite Plaintiff's protest. (Compl. ¶ 32.)

On November 29, 2011, Plaintiff provided Haverford with medical clearance from a leading specialist on eating disorders. (Compl. ¶ 34.) Dean Denney acknowledged receipt of the medical clearance. (Compl. ¶ 35.) Dean Denney informed Plaintiff that an assessment team would determine if the information was sufficient. (Compl. ¶ 35.) The assessment team did not have a physician. (Compl. ¶ 36.) On January 5, 2012, the assessment team determined that Plaintiff met the conditions to be eligible for the softball team. (Compl. ¶ 38.)

Plaintiff consistently and promptly followed up with Coach Ward on opportunities to try out for the team. (Compl. ¶ 40.) However, Coach Ward never offered Plaintiff the opportunity to

try out for the team. (Compl. ¶ 42.) Instead, in February 2012, Coach Ward told Plaintiff that she was cut from the team. (Compl. ¶ 42.) Coach Ward did not communicate with Plaintiff after that point. (Compl. ¶ 43.)

Having been cut from the softball team, during the Spring of 2012, Plaintiff attempted to join the tennis team. (Compl. ¶ 44.) Plaintiff participated in the pre-tennis season. (Compl. ¶ 45.) Haverford's women's tennis coach, Ann Koger ("Coach Koger"), told Plaintiff that she could be on the team. (Compl. ¶ 45.) Coach Koger then told Plaintiff she could not play on the team. (Compl. ¶ 46.)

### e. Senior Year (2012-2013)

During her senior year, Plaintiff inquired about returning to the softball team. (Compl. ¶ 48.) Coach Ward did not communicate with Plaintiff. (Compl. ¶ 48.) Plaintiff graduated from Haverford in 2013. (Compl. ¶ 5.)

### f. Post-College

Plaintiff's Complaint was filed on July 11, 2014. (Dkt No. 1.) Plaintiff alleges that she was not "able to institute legal action at an earlier date due to fear of further discrimination and/or retaliation, which may have impacted her ability to graduate from Haverford and from gaining admission to medical school." (Compl. ¶ 50.) As of July 2014, Plaintiff was entering medical school. (Compl. ¶ 5.)

Defendant moves to dismiss on the grounds that Plaintiff's claims are barred by the two-year statute of limitations relevant to all of Plaintiff's claims. (Mot. to Dismiss, Dkt No. 5 [hereinafter MTD] at 2.)

**III.     Discussion**

**A. The statutes of limitations as to all of Plaintiff's claims are two years. Plaintiff's claims accrued in the Spring of 2012 at the final allegedly discriminatory act.**

The statutes of limitations for Plaintiff's ADA Title III discrimination claim (Count I), Rehabilitation Act discrimination claim (Count II), and retaliation claims under both statutes (Count III) are two years. *See* 42 Pa. Cons. Stat. Ann. § 5524; *Burkhart v. Widnener Univ. Inc.*, 70 F. App'x 52, 53 (3d Cir. 2003); *Freed v. Consolidated Rail. Corp.*, 201 F.3d 188 (3d Cir. 2000); *see also Datto v. Harrison*, 664 F.Supp.2d 472, 482 (E.D. Pa. 2009) (citing *Disabled in Action of PA. v. S.E. Pa. Trans. Auth.*, 539 F.3d 199, 208 (3d Cir. 2008)); *Saylor v. Ridge*, 989 F.Supp. 680, 686 (E.D. Pa. 1998) (collecting cases). Both parties agree. (MTD at 5; Resp. at 6.)

"The general rule is that the statute of limitations begins to run as soon as a right to institute and maintain suit arises." *Burkhart*, 70 F. App'x at 53. "A federal discrimination claim accrues and the applicable statute of limitations begins to run when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Saylor*, 989 F. Supp. at 686. In determining the accrual date of a discrimination claim, the proper focus for the Court is "on the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful." *Chardon v. Fernandez,* 454 U.S. 6, 8 (1981) (citing *Del. State College v. Ricks*, 449 U.S. 250 (1980)).

The parties disagree as to when the two-year period began. Defendant argues that the period began to run in 2010, when Plaintiff was first told she could not participate in the softball or tennis teams, or at the latest in the spring of 2012, the final time that Haverford informed Plaintiff that she could not participate. (MTD at 6.) Under either calculation, Plaintiff's July 2014 Complaint would be time-barred.

Plaintiff counters that the continuing violation theory applies because the discrimination lasted throughout her matriculation at Haverford. (Resp. at 6.) Under Plaintiff's calculation, her claims accrued in the spring of 2013 when she graduated.

A similar fact pattern emerged in *Datto*. In *Datto*, a MD/PHD student Plaintiff filed suit alleging ADA, Rehabilitation Act, and retaliation claims (among others) surrounding his termination from his graduate program. 664 F.Supp.2d at 477-81. Defendants argued that the two-year statute of limitations for these claims began on the date that Defendant notified Plaintiff that he was dismissed from its program. *Id.* at 482. Plaintiff argued instead that the school's ongoing decision to not allow Plaintiff to return to his program meant that his claim continued to accrue under a continuing violation theory. *Id.* Relying on Supreme Court and Third Circuit case law surrounding employment discrimination claims, the *Datto* Court found that Plaintiff's claims regarding the school's decision to dismiss him from his graduate program accrued when Plaintiff was first notified by letter that he had been dismissed. *Id.* at 485 (citing *Ricks*, 449 U.S. at 257; *Bailey v. United Airlines*, 270 F.3d 194 (3d Cir. 2002); *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 855-56 (3d Cir. 2000); *Colgan v. Fisher Scientific Co.*, 935 F.2d 1407, 1419 (3d Cir. 1991)).

The *Datto* Court particularly found the Supreme Court's ruling in *Ricks* instructive – as does this Court. In *Ricks*, Plaintiff, a college professor, filed a civil rights law suit alleging that he had been denied academic tenure because of his national origin. 449 U.S. at 252. Defendant notified Plaintiff that he had been denied tenure, but then offered him a one-year terminal contract. *Id.* at 253. Plaintiff argued that his claims started to accrue only after his terminal contract concluded. *Id.* at 257. Defendant argued that the statute of limitations began to run when it formally notified Plaintiff that it was denying him tenure. *Id.* The Supreme Court held that the

Complaint complained of the "unlawful employment practice" of the discriminatory decision not to offer Plaintiff tenure. *Id.* Thus, the limitations period commenced at the time that the allegedly discriminatory tenure decision was made and communicated to Plaintiff. *Id.* at 257-59. The fact that Plaintiff continued to work for Defendant did not alone constitute a continuing violation. *Id.* at 257. "Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Id.* (citing *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558 (1977)).

In this case, the Court finds that the final discriminatory act complained of by Plaintiff is Defendant's refusal to allow Plaintiff to join the tennis team in the Spring of 2012. (Compl. ¶ 46.)[1] There is no further discriminatory conduct alleged following Spring 2012. Nothing changed in the following year. Following this incident, Plaintiff alleges that Coach Ward did not communicate with her regarding rejoining the softball team. (Compl. ¶ 48.) Neither Coach Ward, Coach Koger, nor any other administrator at Haverford spoke with Plaintiff about her participation on the softball or tennis teams after Spring 2012. The Court finds this situation analogous to those in *Datto* and *Ricks*. The allegedly discriminatory decisions from the softball and tennis teams were made and communicated to Plaintiff in Spring 2012. The fact that Plaintiff continued to be distressed and suffer the consequences of the decisions throughout her tenure at Haverford is not alone sufficient to prolong the life of this cause of action. The Court's focus must be on any alleged continuing *violation*, not on the allegedly continuing *impact* on Plaintiff. *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977). There was no continuing violation after the Spring 2012 decisions, only continuing impact. The continuing violation theory does not apply in this case beyond the Spring 2012 decisions.

---

[1] While the Court does not find that the continuing violation theory applies after the Spring 2012 decision, the Court does hold that Plaintiff has alleged a continuing violation from Fall 2009 until Spring 2012. The clock thus starts from the final alleged violation in Spring 2012.

**B. Equitable Tolling Principles do not apply.**

Plaintiff alleges that she was not "able to institute legal action at an earlier date due to fear of further discrimination and/or retaliation, which may have impacted her ability to graduate from Haverford College and from gaining admission to medical school." (Compl. ¶ 50.)

In the employment context, "purported fear of employer retaliation is not a ground for equitable tolling." *Arizmendi v. Lawson*, 914 F. Supp. 1157, 1162 (E.D. Pa. 1996) (citing *Platt v. Burroughs Corp.*, 424 F.Supp. 1329, 1333 (E.D. Pa. 1976); *accord Carter v. West Pub. Co.*, 225 F.3d 1258, 1266 (11th Cir. 2000); *Pietri v. N.Y.S. Office of Court Admin.*, 936 F.Supp.2d 120, 136 n. 14 (E.D.N.Y. 2013) (collecting cases); *Pratt v. Stop & Shop Supermarket Co., LLC*, 2011 WL 579152, at *4 (E.D.N.Y. 2011) (collecting cases). In the aforementioned cases, retaliation was itself actionable under the applicable statutes. The various courts held that it would defeat the purpose of Congress's intent to add a statute of limitation if a Plaintiff could defer filing so long as he feared retaliation, particularly where Congress had already instituted the failsafe mechanism of a retaliation cause of action.

The Court finds these employment discrimination cases instructive in this context as well. Retaliation is actionable under both the ADA and the Rehabilitation Act. 42 U.S.C. § 12203(a); 29 U.S.C. § 794. Given that a Plaintiff has causes of action for retaliation under the ADA and the Rehabilitation Act, fear of retaliation cannot toll the statute of limitations for other claims under these acts.

### C. The filing of a PHRC Complaint does not toll the limitations period.

Plaintiff argues that the statute of limitations should be tolled as of August 26, 2013 when Plaintiff filed a complaint before the Pennsylvania Human Relations Commission ("PHRC").[2] Plaintiffs are not required to exhaust their administrative remedies prior to bringing a suit under Title III of the Americans with Disabilities Act, *Burkhart v. Widener University, Inc.*, 70 Fed. Appx. 52, 54 (3d Cir. 2003), or section 504 of the Rehabilitation Act. 29 U.S.C. § 794(a); *Freed v. Consol. Rail Corp.*, 201 F.3d 188 (3d Cir. 2000). The Third Circuit has held that because Title III "does not require the exhaustion of state remedies, the fact that [Plaintiff] pursued a claim before the PHRC does not toll the statute of limitations." *Burkhart*, 70 Fed.Appx. at 54. That same logic applies to section 504 of the Rehabilitation Act and the attendant retaliation claims. The statue of limitations has not been tolled.

BY THE COURT:

/s/ C. Darnell Jones, II

_____

C. Darnell Jones, II    J.

---

[2] Defendants argue that the PHRC argument is "improper because it was not included as an allegation in her Complaint." (Reply at 3.) However, in evaluating the statute of limitations on a motion to dismiss, the Court may consider the pleadings, the exhibits attached to the complaint, and matters of public record. *Oshiver,* 38 F.3d at1384 n. 2. As such, the Court will consider the PHRC complaint.